TROUSER CO. v. RAILROAD.

(Filed October 24, 1905).

*Railroads—Liability for Baggage—Merchandise as Baggage — Insurer — Warehousman — Degree of Care Required.*

1.  If a railroad company receives for carriage, from a passenger, trunks containing merchandise or articles other than the personal baggage of the passenger, with knowledge of their contents, it is liable on its contract as an insurer for any loss of, or damage to the property, not resulting from the act of God or the public enemy.

2.  While the obligation of a carrier of passengers is limited to ordinary baggage, yet if it knowingly permits a passenger, either with or without payment of an extra charge, to take articles as baggage which are not properly such, it will be liable for their loss or for damage to them, though it may have been without any fault.

3.  When the baggage has arrived at its destination and has been deposited at the usual or customary place of delivery and kept there a sufficient time for the passenger to claim and remove the same, the company's liability as a common carrier ceases, and it is thereafter liable only as a warehouseman, and bound to the use of ordinary care.

4.  Although a carrier has no knowledge of the contents of trunks, which contain samples, yet some care at least should be taken of the trunks after they arrive at their destination, and it has no right to leave them for three days on the platform of its depot exposed to the weather.

ACTION by Charlotte Trouser Co. against Seaboard Air Line Railway Co., heard by *Judge Walter H. Neal* and a jury, at the August Term, 1905, of the Superior Court of UNION County.

Action for injury to sample trunks. One J. D. Futch, plaintiff's traveling salesman, boarded, with defendant's per-

mission, one of its freight trains with a caboose, on which he had been accustomed to travel, at Wingate, for Monroe, and delivered at the same time to defendant, two trunks containing samples to be carried with him on said train to his destination. Futch paid his fare to the conductor, but nothing extra for the baggage. The train stopped at the freight depot in Monroe, which, defendant contended upon the evidence, was its usual stopping place where baggage carried on that train was received and delivered, though it appeared that the baggage room was in the passenger depot, not far away. The trunk was placed on the platform of the freight depot, and remained there from Friday, the day of arrival, until the next Monday. There was a rain Sunday at noon, which greatly damaged the samples. The transfer clerk at the freight depot, about an hour after the train arrived, promised Futch to take care of his trunks, and transfer them to the passenger depot, where he expected to get them the next Monday, as Saturday was a holiday, and he supposed that he could not get them on that day or Sunday. There was testimony tending to show that Futch delivered the trunks to the conductor of the train as baggage, and the latter knew what they contained. Issues were submitted as to negligence, contributory negligence and damages, to each of which the jury responded in favor of the plaintiff. After overruling a motion for a new trial, judgment was entered on the verdict, and the defendant appealed.

*Redwine & Stack* for the plaintiff.
*J. D. Shaw* and *Adams, Jerome & Armfield* for the defendant.

WALKER, J., after stating the case: It is settled by the great weight of authority, that if a railroad company receives for carriage, from a passenger, trunks containing merchandise or articles other than the personal baggage of the passen-

ger, with knowledge of their contents, it is liable on its contract as an insurer for any loss of, or damage to the property, not resulting from the act of God or the public enemy. *Railroad v. Swift,* 12 Wall., 262; *Railroad v. Bowler,* 57 Ohio St., 38; *Railroad v. Berry,* 60 Ark., 433; *Jacobs v. Tutt,* 33 Fed. Rep., 412; *Railroad v. Carrow,* 73 Ill., 348; *Railroad v. Conklin,* 32 Kan., 55; *Humphrey v. Perry,* 148 U. S., 627; *Railroad v. Hochstim,* 67 Ill. App., 514; *Oakes v. Railroad,* 20 Ore., 392. It is in such a case held to the full measure of its common law liability for the reason so well expressed by *Justice Field* in the case first cited: "If at any time reasonable ground existed for refusing to receive and carry passengers applying for transportation, and their baggage and other property, the company was bound to insist upon such ground if desirous of avoiding responsibility. If not thus insisting, it received the passengers and their baggage and other property, its liability was the same as though no ground for refusal had ever existed." The same case and many other authorities also establish the proposition that while the obligation of a carrier of passengers is limited to ordinary baggage, yet if it knowingly permits a passenger, either with or without payment of an extra charge, to take articles as baggage which are not properly such, it will be liable for their loss or for damage to them, though it may have been without any fault. *Oakes v. Railroad,* 20 Ore., 392; *Macrow v. Railroad,* L. R. 6 Q. B., 612; *Railroad v. Bowler, supra.* When the baggage has arrived at its destination, and has been deposited at the usual or customary place of delivery, and kept there a sufficient time for the passenger to claim and remove the same, the company's liability as a common carrier ceases, and it is thereafter liable only as a warehouseman, and bound to the use of ordinary care. This newly arisen duty requires the company to place the baggage in a proper and suitable place, such for example, as a baggage room, and then to exercise ordinary care and diligence

in safely keeping it there, and, wherever the place of deposit may be, in seeing that the baggage is protected from injury by exposure to the weather, or by other cause. *Haegar v. Railroad,* 63 Wis., 100. If a railway company, without knowing their contents, receives from a passenger trunks to be carried over its line, which contain articles other than personal baggage, such as merchandise, some of the courts hold that while the company is not liable as a common carrier for any loss of or damage to the merchandise, it is bound by the law to the exercise of ordinary care in handling the trunks and for any loss or damage resulting from the failure to use such care, the company is liable to the passenger, it having assumed the relation to the property of an ordinary bailee, the duty of the latter being to take such care of the property as an ordinarily prudent man would of his own, under like circumstances, *Pennsylvania Co. v. Miller,* 35 Ohio St., 541; and other courts hold that the company is liable, as a gratuitous bailee, only for gross negligence, *Humphreys v. Perry,* 148 U. S., 627; *Railroad v. Carrow,* 73 Ill., 348; and still other courts hold that the passenger cannot recover at all, there being no contract as to any article not baggage, and no consideration paid for its carriage or its care, *Bluemantle v. Railroad,* 127 Mass., 322; although it was held by the same court, which decided *Bluemantle's case,* that it would undoubtedly be competent for a railway company to agree to transport, at its risk, merchandise by its train for the price of the ticket sold to the passenger. *Alling v. Railroad,* 126 Mass., 131. The subject is fully discussed and the authorities collated in 2 Fetter on Carriers of Passengers, secs. 587 to 614.

It clearly appears from the form of the issues, that the court below tried this case upon the theory that the defendant was liable, as a bailee, only for negligence, and not that it could be held to answer, as an insurer, by virtue of its common law liability as a carrier.

If care is required to be used by the company where the character of the articles is not disclosed, some difficulty is found in determining the exact measure of responsibility, because some courts have held that the negligence must be gross. It was said by *Baron Rolfe* (afterwards *Lord Cranworth*), in *Wilson v. Brett,* 11 M. & W., 113, that gross negligence is ordinary negligence with a vituperative epithet, and the court in *Railway v. Arms,* 91 U. S., 489, adopting the view of *Baron Rolfe,* which had been approved in *Beal v. Railroad,* 3 H. & C., 337, and *Grill v. Collier Co.,* L. R. 1 C. P., 600, said that "gross negligence" is a relative term, and is doubtless to be considered as meaning a greater want of care than is implied by the term "ordinary negligence," but, after all, it means the absence of the care that was necessary under the circumstances, or that it was the duty of the defendant to use. In this case, while the court refused to give the instruction asked by the defendant in its first prayer, it did give the one contained in the second prayer, which, with the general charge, sufficiently called upon the jury to find whether the defendant's conductor knew there were samples in the trunk; and we think the verdict, which should be read in the light of the evidence and the charge, clearly indicates that they did so find. The evidence in regard to this knowledge was positive and unequivocal. The witness Futch testified that he delivered the trunks to the defendant as baggage, and that the conductor knew what they contained. The conductor was not introduced as a witness, nor was there any evidence offered to contradict this statement. The defendant introduced no evidence at all. In the state of the proof, the judge would have been well warranted in charging the jury that, if they believed the facts to be as stated in Futch's testimony, they should answer the issues as to negligence and contributory negligence in favor of the plaintiff. If the defendant knew that the trunks contained samples, and nevertheless, received them as bag-

gage, it was certainly liable for any loss sustained, if, after the plaintiff had a reasonable time to claim and remove the trunks, it failed to take ordinary care of them. If it had no knowledge of their contents, we yet think that some care, at least, should have been taken of the trunks, and that as matter of law it had no right to practically abandon them, or leave them for three days on the platform of its depot building exposed to the weather. This was certainly not ordinary care, but in our opinion, was the very smallest degree of care, if care at all, that could have been exercised under the circumstances. The best considered cases, and the most numerous, bind us on the point that the defendant must have exercised some degree of care before it can be relieved of liability. In the view we take of it, there is no element of contributory negligence in the case. The only question is, did the defendant do its duty with reference to the care of the trunks, after they reached their destination at Monroe? and, upon the uncontroverted facts, we are of the opinion that it did not. There was no error committed by the court in the trial below.

No Error.