CYRUS P. BRADLEY, Appellant, v. MICHAEL GEISELMAN, Appellee.

APPEAL FROM COOK COUNTY COURT OF COMMON PLEAS.

Where there is a conflict of testimony, and the jury choose to discredit a witness, under proper instructions, this court will not interfere.

In an action of trespass for seizing personal property, there is no objection to allowing interest on the value of the goods from the time they were taken from the possession of the plaintiff.

THIS was an action brought by Michael Geiselman, in the month of January, 1854, in the Cook County Court of Common Pleas, against Cyrus P. Bradley, for an alleged trespass in seizing certain personal property, on or about the 13th January, 1854.

The plaintiff claimed the property in the declaration mentioned, by a sale made to him on or about the thirtieth of December, A. D. 1853, by Elisha W. King and Henry A. Layton, doing business under the firm of H. A. Layton & Co. The defendant pleaded the general issue, and two special pleas.

1st. That three several executions had been issued upon the 24th day of October, 1853, upon three several judgments, one in favor of Harmon & Co., one in favor of Williams & Co., and one in favor of Walters & Co., against William J. King, which executions were severally placed in his hands, he then being sheriff of the county of Cook, on the 29th day of October, 1853, and that as such sheriff, and in obedience to the command of said executions, he did, on the 13th January, 1854, seize, take and carry away the goods and chattels in the declaration mentioned, and that William J. King owned and had an interest as partner, in the property in the declaration mentioned, and that the same was subject to said executions, and that the property was not in the plaintiff, etc.

2nd. That the property in the declaration mentioned, was seized under and by virtue of the executions above mentioned, and that on the 29th October, 1853, when the executions were delivered to him, it was the property of William J. King and Henry A. Layton, partners, doing business under the name of H. A. Layton & Co., and the interest of William J. King in said property, was, by the delivery of said executions to him on the said 29th October, 1853, made subject to the lien of said executions, and to sale thereunder, and the property was not in the plaintiff.

To these pleas, replications were filed, denying that Bradley was sheriff, and also denying that the property belonged to W. J. King.

The case was tried at the February term of the Cook County Court of Common Pleas, 1854, and the jury disagreed and were discharged. It was afterwards removed, upon the petition of the plaintiff (Geiselman), to Kane county, and was there tried before ISAAC G. WILSON, Judge, and a jury, at the May term, 1855, and a judgment rendered in favor of the plaintiff below, for nineteen hundred and twelve dollars and twenty-five cents, from which judgment defendant appealed to this court.

The case having been reversed and remanded, it was again tried before the same judge, at February term, 1859, and verdict rendered for $2,495. The plaintiff thereupon entered a *remittitur*, for the sum of two hundred and four dollars and fifty-seven cents, and a judgment was entered for the sum of $2,290.43, from which judgment the defendant now appeals.

The plaintiff asked the court to give to the jury the following instructions, which was done:

1st. If the jury believe, from the evidence, that the plaintiff, Geiselman, purchased the property in question from Henry A. Layton and Elisha W. King, in good faith, and paid them the full price and value thereof, and took possession of the same ; and that at the time of the sale they sold the same as their own property, and Geiselman purchased said property from them as their property ; and that afterwards, whilst said property was yet remaining in Geiselman's possession, the defendant took the same from him upon an execution against William J. King, then the burden of proof is with defendant to show that said property was the property of William J. King, and not the property of Henry A. Layton and Elisha W. King, and in order to prove this, the defendant must show by competent proof, property in William J. King; and if the jury believe that the defendant has failed in his proof of ownership in this particular, then the law is for the plaintiff, and the jury must find for him, and assess his damages at what the property was worth, at the time the same was so taken from the plaintiff, and interest on the same from the time of taking, until the time of the finding by the jury for him.

2nd. If you believe, from the evidence in this cause, that the witness William White has intentionally sworn false as to any material fact in this cause, you are at liberty to disregard his evidence.

If the jury believe, from the facts and circumstances given in evidence in this cause, that the positive statements sworn to by White are false, you are not bound to believe said statements ; and in deciding the issue in this cause, the jury have the right to take into consideration the conduct of said White, in his connection with the transaction of the sale from Layton & Co.,

to the plaintiff, in determining the credit you give to his evidence.

3rd. If the jury shall believe, from the evidence, that the plaintiff acquired a good and valid title to the property in dispute, by purchase from Layton and Elisha W. King, and that the same was taken by the defendant as charged, then the plaintiff is entitled to recover the full value of the property, at the time the defendant levied thereon, with interest from the date of said levy.

4th. If the jury believe, from the evidence, that William J. King was the agent of Elisha W. King, to conduct for said Elisha W. King the saloon business in the city of Chicago, and that the said William J. King, as such agent, formed a copartnership between said Elisha W. King and Henry A. Layton, under the name and style of Henry A. Layton & Co., and as such were openly and publicly carrying on said business, then the law is, that the said firm had a lawful right to sell and dispose of their partnership property, and if the jury are satisfied, from the evidence, that Geiselman, the plaintiff, purchased for good consideration the partnership property of said firm of Henry A. Layton & Co., and took possession of the same, he thereby acquired a good title, and was the owner of the same, and the jury should find for him, and assess his damages.

That fraud is never to be presumed against a party, but must be proven by the person alleging the same, or by some sufficient proof in the case.

The defendant asked the court to give the jury the following instructions:

1st. If the jury shall believe, from the evidence, that after the delivery of the executions to the sheriff on the 29th day of October, 1853, William J. King had or owned any interest in the property levied on by the sheriff, either as a partner with Layton or in any other way, then the interest of said King was subject to the lien of the executions from the date of their delivery to the sheriff, and the defendant had a right to take possession of the property, and to sell the interest of said King in the same, under said executions, and no sale by King to the plaintiff could defeat the right of the sheriff to levy and sell, and the plaintiff cannot recover for said property.

2nd. That the question before the jury in this case is the ownership of the property at the time the executions were placed in the hands of the sheriff of Cook county, and if William J. King owned the property levied on, or had an interest therein as a partner, at the time of the delivery of the execution to the sheriff, such interest was subject to the lien of said

Bradley *v.* Geiselman.

executions, and to a sale under the same, and the plaintiff cannot recover.

3rd. If the jury shall believe, from the evidence, that Elisha W. King was not a partner in the firm of H. A. Layton & Co., at the formation thereof, and that the capital stock of said firm was paid in by William J. King, or by him and Layton, and the purchases of goods made by William J. King in his own name, or in the name of H. A. Layton & Co., or with his own, or with his and Layton's money, or upon his or their credit, then the interest of said William J. King in said property could not have become vested in Elisha W. King, if any such man ever existed, except by the voluntary conveyance by William J. King to him, or by the operation of law, and no power of attorney executed by Elisha W. King after the investment of such capital stock, or the purchase of the goods by William J. King, or by him and Layton, could have affected in any manner the interest of William J. King previously acquired in the property.

4th. If the jury shall believe, from the evidence, that Layton and William J. King entered into a partnership and purchased property and did business together as partners, in the month of September, 1853, and continued in business as such partners up to the 13th day of October, 1853, then the interest of said partners in said property could not be affected or altered by any power of attorney given by Elisha W. King to William J. King, on the said 13th day of October, 1853.

5th. If the jury shall believe, from the evidence, that the only authority William J. King had, to act for Elisha W. King, was in the event of the said Elisha W. King's entering and engaging in the business of keeping an eating and drinking saloon, in Chicago, subsequent to the 13th day of October, 1853, and that before the said 13th day of October, H. A. Layton and W. J. King had established and were keeping an eating and drinking saloon in Chicago, such power of attorney did not give any authority to William J. King to act for Elisha W. King, in regard to the business of the saloon owned and kept by H. A. Layton and William J. King, previous to that date.

Which were severally given by the court.

WILLIAMS, WOODBRIDGE & GRANT, for Appellant.

T. L. DICKEY, for Appellee.

WALKER, J. It is insisted that this judgment should be reversed, because the finding of the jury is manifestly against

the weight of evidence. While the evidence is perhaps, not of that positive and clear character, which would relieve the case of doubt, and entirely satisfy us of the correctness of the conclusions at which the jury have arrived, there is not such a want of evidence to support the verdict, as to render it manifest, that it is wrong. Defendant in error was found in the possession of the goods when the levy was made, and that was *prima facie* evidence of ownership. He purchased of Layton and Elisha King, as appears by the bill of sale, and this should have been rebutted by the plaintiff in error, to entitle him to defeat a recovery. The only evidence tending to do so, was that of White, and the instruction of the court, left it to the jury to determine, whether he had testified falsely to any material fact in the case, and if they so found, directed them that they would be at liberty to disregard his entire evidence. And that in determining what weight his evidence was entitled to, they might take into consideration his acts, in effecting the sale of this property to defendant in error. These instructions fairly presented the law, and the jury were unquestionably the judges of his credibility, and if they have found him unworthy of belief, it was clearly within their province, and we have no right to give to his evidence more weight than they have done. And if this evidence was not believed by them, to be worthy of credit, they could not have found otherwise than they did. Leave his evidence out of consideration, and there was an abundance of testimony, to warrant their finding that the property belonged to defendant in error. This seems to have been the result on the trial of this case before two different juries, and we are unable to say that it would probably be changed by submitting it to a third.

The jury by their verdict seem to have given the plaintiff below the invoice price of the goods, with interest. But there was two hundred dollars of that sum, which he reserved to meet the increased rent on the house, which does not appear to have been paid by him, and should not have been allowed. But this was corrected, by the remittiter of that sum by plaintiff below, before judgment was rendered. And if interest was calculated upon the sum of $1,800, which he paid, from the time of the seizure of the goods until the trial, it will be found to exceed the amount of the judgment. There is no objection to allowing interest on the value of the goods from the time they were taken from his possession. And in the conflict of the evidence as to their value, it was for the jury to determine it, and having done so it should not be disturbed.

The instructions asked and given, for each party, presented

the law plainly, and the finding of the jury is not in conflict with them, and is supported by the evidence in the case.

The judgment of the court below is affirmed.

*Judgment affirmed.*