## Louisville & N. R. R. Co. v. Mary Cunningham.

1. COMMON CARRIERS—*Always Responsible for Negligence.*—A common carrier is always responsible for his negligence, no matter what his stipulations may be.

2. SAME—*Negligence of, a Question of Fact.*—Whether or not there has been negligence in the transporting of goods by a common carrier, is, like negligence in other respects, a question of fact.

3. SAME—*When Special Contract Must Be Specifically Pleaded and Proved.*—Where a carrier seeks to escape responsibility for a loss or injury, on the ground that it was within the exception provided by a special contract, the contract itself must be specifically pleaded and proved.

Assumpsit.—Damages from loss of goods. Appeal from the Circuit Court of Cook County; the Hon. GEORGE W. BROWN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1899. Affirmed. Opinion filed April 4, 1900.

J. M. HAMILL, attorney for appellant; CHYTRAUS & DENEEN, of counsel.

KNIGHT & WAGNER, attorneys for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court.

The appellee brought suit in assumpsit against the appellant, as a common carrier of goods, to recover her alleged damage for loss and injury to a car load of household furniture delivered by appellee to appellant at Memphis, Tennessee, for carriage to Chicago, Illinois, and recovered a verdict and judgment for $2,000.

The declaration consisted of the common counts and two special counts.

The special counts are based upon the common law duty of appellant, and do not seem to materially differ, except that in the first one it is charged that a part of the furniture became wholly lost, and in the second one that all of it became badly broken and damaged, through the negligence and carelessness of the appellant.

The pleas of the appellant to the declaration were the general issue, and a special plea of release as to the second special count. The substance of the special plea was as follows:

"That in consideration of a reduced rate of freight granted to the plaintiff, lower than the regular rate, plaintiff, by her agents, Rosenbaum, Mandel & Company, executed and delivered to the defendant for the consideration aforesaid, a release releasing defendant and each and every carrier over whose lines said goods may pass to their destination, from all damages that may occur to said goods from decay, chafing or breaking, or from any other cause not the result of the carelessness or negligence of the defendants. And that said furniture was not broken, damaged or injured by the carelessness or negligence of the defendant or its servants, and that whatever damage such furniture received was caused by the ordinary movements, shaking and oscillation incident to and connected with the transportation of furniture by rail from Memphis to Chicago, and not on account of any carelessness or negligence on the part of the defendant or its servants, and for such damages defendant is released and discharged."

To said special plea plaintiff filed two replications, the first, that the release was not the deed of the plaintiff, and the second, that the injury and damage to the furniture was caused through the carelessness and negligence of the defendants.

Both of the special counts of the declaration averred, in effect, that the contract of carriage was entered into and the goods delivered to and received by appellant, as a common carrier, etc., in the city of Memphis, in the State of Tennessee, and much argument is indulged in upon both sides, as to whether or not the law of Tennessee, with reference to the effect to be given to the pleaded release, was provable by appellant under such averment without specially pleading such law.

But inasmuch as the trial court admitted in evidence everything that was offered to show what the Tennessee law was, together with the bill of lading and the release itself, and gave to the jury every instruction with reference thereto that appellant asked, we see no occasion for discussing the question.

It is not claimed in argument, or by appellant's special plea, that under the law of Tennessee a common carrier could, by contract with the shipper, be released from damages to goods being carried, resulting from the carelessness or negligence of the carrier or its servants. The release in question in terms reserved from its effect the liability of appellant for loss or damage which might be " the result of the carelessness or negligence of the agents or other employes of the company," and so doing, was no more than an express recognition of the doctrine prevailing everywhere under the common law, that "a common carrier is always responsible for his negligence, no matter what his stipulation may be." Express Co. v. Caldwell, 21 Wallace, 264.

No instructions were offered by appellee, and every one that was offered by appellant was given, except one, offered at the close of all the evidence, " to find the defendant not guilty," and another, offered at the end of the series of instructions that were given, " to find the issues for the defendant."

One or more of those that were given, covered the effect to be given by the jury to the release, fully and in unmistakable language, and the necessary intendment of the verdict must be and is, that, from the evidence, the jury believed the damage complained of resulted from the negligence of appellant's agents.

Now, is the verdict upon the question of appellant's negligence in caring for the furniture so manifestly against the weight of evidence, as it is strenuously insisted to be, as also, that it is in positive defiance of the law, as to require us to set it aside ?

The positive testimony of the man who delivered the furniture to the appellant and packed it in the car, is that he had been in the business of repairing and packing furniture for twenty years, in Memphis and Evansville, and knew how it should be packed to be shipped; that he moved the furniture to and packed it in the car; that he handled every piece as it was packed in the car; that he examined the fur-

niture when he packed it, and it was in good condition; that he took the furniture apart, the glasses and marbles off, and packed it in the car with straw, carpets and rugs between the pieces, and that it was all properly, carefully and skillfully packed in the car; and such testimony is in no manner contradicted, except by the fact that the furniture was in a confused mass and badly broken when the car was opened at Chicago.

There seems to be no contention but that the furniture was broken and damaged before the car reached Chicago and was opened.

The furniture mover employed by appellee to remove the furniture from the car, and who, with his men, seems to have been the first to enter the car after it was opened, described its condition in a manner that warrants the inference that something serious had happened to the car and its load after it left Memphis, and that perhaps it had been repacked or reloaded at some time during its journey. He testifies that the car did not contain any straw, such as the Memphis packer testified he used in the packing; that "nearly everything was split or cracked or a piece broken off, and in some instances some of the pieces were gone. There were large mirrors smashed and broken, pictures broken, and the pieces of the pictures and broken glass were not in the car, which would indicate that they were not broken in that car. There were several marble slabs broken, and the corner of one was broken off and the corner gone; it was not in that car. There was a piece of wardrobe broken and the piece was not in that car. We hunted for the pieces of furniture to get it together. If the furniture had been broken in the car those pieces would have been on the floor. The floor of the car was clean."

Naturally, the evidence of accident or other happening to the car while en route, lay more peculiarly within the power of appellant than of appellee, and the car was traced by appellant, and its exterior condition at different points along the route was shown, from which it might be inferred that the car was not subjected to risks or damages other than those incident to the ordinary transportation by rail. It

was also shown by appellant that the car was "sealed" at Memphis and that the seals did not appear to have been broken or tampered with.

Whether or not there has been negligence in the transporting of furniture by a common carrier, must be, like negligence in other respects, a question of fact.

Here was a car load of loose furniture received for carriage for a good many hundred miles.    There is no room to doubt it was badly injured on the journey.    Whether the damage occurred on the line of the receiving carrier, or on the line of the connecting carrier, it is not possible to say. Clearly no measures were taken, or they would have been shown, to open the car at any time it was upon the (approximately) half of the distance covered by appellant's line of road, and find out if the furniture was riding securely.

Was it, or not, a negligent carrying, not to do so?    Appellant's agents at Memphis had actual notice of the general contents of the car, and the bill of lading must have been notice to all other agents, through whose hands it passed, that the contents of the car were of a kind that needed care. Did they exercise proper care in regard to it?    These and many other kindred inquiries might be put, and the jury had a right, in considering them, to draw all proper inferences from the evidence relating to the care, or lack of it, that was exercised over it.    There is a strong inference from the lack of affirmative proof to the contrary that no care, except such as an inspection of the outside of the car would prompt, was taken of the furniture from the time the release was given until its arrival in Chicago, except such as was purely incidental to seeing that the car containing it reached its destination in due course.    Was such care sufficient under the circumstances?    We are not prepared to say it was, as a matter of law.

The additional point is urged, that no demand or claim for damages, as required by the provisions of the bill of lading, was made upon the Chicago and Eastern Illinois Railroad Company, the connecting carrier by whom the delivery in Chicago was made, within thirty-six hours after the goods arrived in Chicago.

The declaration, as noted, counted upon the common law liability of appellant, as a common carrier, and not upon the bill of lading, and it was upon the theory of such common law liability alone, and not at all upon the special contract contained in the bill of lading, that appellee made out her *prima facie* case. The stipulations contained in the bill of lading were used by appellant in defense, and not by the appellee to make out her case.

It was, therefore, not incumbent upon the appellee to prove the demand or notice of claim required by the special provisions of the bill of lading. The lack of such demand was relied upon by way of defense, and it was for the appellant to specially plead such provisions and to prove them.

" Where the carrier seeks to escape responsibility for a loss or injury, on the ground that it was within the exception provided by a special contract, the contract itself must be specifically pleaded and proved." Am. and Eng. Ency. of Law (2d Edition), Vol. 5, p. 358.

But, waiving the question of the necessity of specifically pleading such defense, there appears sufficient evidence in the record for the jury to base a finding upon, that conduct, equivalent to demand, was shown, and that negotiations followed which amounted to a waiver, sufficient to take the place of a formal demand.

Our first impression was, from reading the evidence, that the verdict was excessive and demanded a reversal, or a remittitur as a condition of not reversing, but a more thorough consideration of the evidence has convinced us that there is no sufficient legal basis for either.

The evidence tended to show that there was a large amount of the furniture—enough for a twenty-two room house, or ten wagon loads—and that some of it was of an expensive kind, the whole being worth in the neighborhood of $4,000, and that three van loads of that which was most injured sold for $30. Under all the evidence in the record, the jury had the right to find that the furniture was properly packed in the car at Memphis, and was damaged in transit through the negligence of appellant, and what the

loss was.   We do not see any legitimate method whereby we may rightfully substitute our judgment for that of the jury and the trial judge.

The judgment of the Circuit Court will therefore be affirmed.